**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ANTHONY MEDICI,**

      **PLAINTIFF,**

**V.**                              **CIVIL ACTION NO.:**

**EXPERIAN INFORMATION**
**SOLUTIONS, INC.**
                                ***JURY TRIAL DEMANDED***

      **DEFENDANT.**

**COMPLAINT**

Plaintiff Anthony Medici ("Plaintiff"), by and through his undersigned counsel, and with knowledge as to his own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery, alleges as follows:

**PRELIMINARY STATEMENT**

1.    This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq.* ("Fair Credit Reporting Act" or "FCRA") and the New York Fair Credit Reporting Act, NY General Business Law §§ 380, *et seq.* ("NY FCRA").

2.    "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011).

3.    Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting.

Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).  Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."  15 U.S.C. § 1681(b).  Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

4.      "Mixed files" create a false description of a consumer's credit history.

5.      A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.

6.      The Federal Trade Commission defined a mixed file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than

the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F. Supp. 361, 362 (N.D. Tex. 1991).[1]

7.      Mixed files are not a new phenomenon.  Experian has been on notice of the existence of mixed files for over (30) years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

8.      In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against the nationwide consumer reporting agencies, including Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

9.      In the 1990's the Attorneys General of a number of states filed a lawsuit against Experian's predecessor TRW because of their failure to comply with the FCRA, including the mixing of consumers' files.

10.      In 1991, TRW signed a Consent Order with the FTC.  To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full first and last name, full street address, zip code, year of birth, any generational designation and social security number.

11.      More recently, Experian has been the subject of numerous state attorney general actions relating to mixed files.

12.      For example, the New York Attorney General filed charges and settled claims with Experian over mixed files.[2] *See In the Matter of Eric T. Schneiderman,*

---

[1] Experian Information Solutions, Inc. is formerly known as TRW, Inc.

[2]      http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited December 6, 2017; *see also*

*Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion LLC.*

13.     In 2012, Ohio Attorney General Mike DeWine initiated a multistate investigation of the Experian's credit reporting practices, including the incidence of mixed files.  Thirty-one states participated in the enforcement action against Experian, including Alabama, Alaska, Arizona, Arkansas, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, and Wisconsin.  The enforcement action resulted in a six million-dollar ($6,000,000.00) settlement with Equifax, Experian and Trans Union.[3] Further, the defendants promised to take steps to reduce the number of mixed files.

14.     Similarly, in 2014, the Mississippi Attorney General filed a lawsuit against Experian alleging "a lieutenant colonel in the Army National Guard was denied credit and forced to buy numerous credit monitoring services due to Experian's failure to distinguish between his credit history and those of other people in his family."[4]

15.     Experian issued a public statement about the lawsuit in the preceding paragraph entitled, "Why Mississippi Lawsuit Against Experian has no Merit."[5]

---

https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf      Last visited December 6, 2017.

[3] https://texasattorneygeneral.gov/oagnews/release.php?id=5092 last visited December 6, 2017.

[4] http://www.nola.com/business/index.ssf/2014/06/mississippi_sues_credit-report.html last visited December 6, 2017.

[5] https://www.experian.com/blogs/news/2014/06/21/why-mississippi-lawsuit-against-experian-has-no-merit/ last visited December 6, 2017.

16.    Experian, Equifax and Trans Union recently settled the "meritless lawsuit" for over seven million dollars ($7,000,000.00).[6]

17.    Prior to this lawsuit, Experian, was, or should have been, aware of each of the Federal Trade Commission and state attorney general enforcement actions[7] concerning or related to mixed files.

18.    Notwithstanding, mixed files continue to occur despite consumers' unique personal identifying information, such as social security numbers, date of birth and addresses.

19.    Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

20.    The disclosure of consumers' credit files to third parties is recorded by the defendants as a request for the consumer's credit history.

21.    Inquiries are items of information contained in a consumer's "file," as that term is defined by 15 U.S.C. § 1681(a)(g).

22.    Experian records and retains inquiries in consumers' files.

23.    Experian categorizes inquiries as either a "hard" inquiry or a "soft inquiry."

24.    Hard inquiries are shared with third parties.

25.    Hard inquiries reduce a consumer's credit score.

---

[6] http://www.ago.state.ms.us/ag-jim-hood-announces-that-experian-transunion-and-equifax-will-overhaul-credit-reporting-practices-and-end-deceptive-marketing-in-mississippi/ last visited Dec 6, 2017.

[7] Including the Alabama state attorney general enforcement action settled May 20, 2015. *See* http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx Last visited December 6, 2017.

26.     The number of hard inquiries in a twelve-month period may be a reason for a credit denial.

27.     Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

28.     Experian has been sued thousands of times wherein an allegation was made that said defendant violated the FCRA.  Moreover, said defendant is sued hundreds of times per year wherein an allegation is made that said defendant mixed a consumer's file with that of another person.

29.     Private FCRA lawsuits have resulted in multi-million dollar verdicts for consumers with mixed files.

30.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes.  The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages.  Despite the verdict, Experian continues to mix consumers' files with other consumers' files.

31.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes.  Despite the verdict, Experian continues to mix consumers' files with other consumers' files.

32.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes.  Despite the verdict, Experian continues to mix consumers' files with other consumers' files.

33.     Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control list based on first and last name alone. *See Ramirez v. TransUnion LLC, Case No. 3:12-cv-00632* (N.D. Cal.)  Despite the verdict, Experian continues to mix consumers' files with other consumers' files.

34.     Over the last ten years, Experian has been sued hundreds of times by consumers whose files were mixed with a different consumer by Experian.

35.     Experian is sued over five hundred times per year wherein a consumer makes an allegation that Experian violated the FCRA.

36.     In the regular course of business, Experian maintains records of lawsuits filed against it.

37.     Experian's business records include the sections of the FCRA alleged to have been violated for each of the lawsuits filed against it in at least the five years preceding Plaintiff's Complaint.

38.     Further, Experian's records identify the claims made by the plaintiff, such as whether the plaintiff alleged Experian mixed the plaintiff's file or if the plaintiff is a victim of identity theft.

39.     In *Calderon v. Experian*, the court compelled Experian to produce a list of prior lawsuits concerning mixed files against it for the five (5) years preceding Plaintiff's complaint. Also, the court compelled Experian to produce discovery on the number of mixed file disputes it handled in the preceding five (5) years. *Calderon v. Experian*, Case 1:11-cv-00386-EJL-MHW, pp. 7-8 (D. Idaho Jun. 18, 2012).

40.     Indeed, Experian has produced the *Calderon* list in other lawsuits, including lawsuits filed by the undersigned.

41.     "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

42.     Experian has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

43.     No less than three federal Courts of Appeal have held a consumer reporting agency violates § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

44.     The FTC had specifically warned consumer reporting agencies to review their procedures when a mixed file case occurs.

45.     The New York Fair Credit Reporting Act, NY Gen. Bus. L. § 380 – 380-U, provides additional protections to consumers in New York State against consumer reporting agencies including the right to seek injunctive relief. The NY FCRA, similar to

8

the federal statute, requires that "[c]onsumer reporting agencies shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates." N.Y. Gen. Bus. Law § 380-j(e).

46.     Despite federal law, state law, Congressional mandate, federal and state government enforcement actions, thousands of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

47.     The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

48.     Experian's parent corporation, Experian plc, reported $4.6 billion in revenue in 2016.[8]

## JURISDICTION & VENUE

49.     This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

50.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

51.     Plaintiff is an adult individual. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and NY FCRA (NY G.B.L. § 380-a(b)).

52.     Experian is an Ohio corporation with its principal place of business in California. Experian is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f) and NY FCRA (G.B.L. § 380-a(e)). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers

---

[8] https://www.experianplc.com/media/2733/experian-ar2016.pdf Last visited December 6, 2017.

for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation. Experian outsources business services, including processing consumer disputes, to its vendor or sister company, or both, in Santiago, Chile.

## FACTUAL ALLEGATIONS

53.     Experian is regulated as a "consumer reporting agency" ("CRAs") under the FCRA 15 U.S.C. § 1681a(f) and NY FCRA (G.B.L. § 380-a(e)).

54.     Experian sells millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

55.     Experian's primary business is the sale of consumer reports.

56.     Pursuant to the FCRA, Experian must follow reasonable procedures which assure that the reports it sells meet the standard of "maximum possible accuracy."   15 U.S.C. § 1681e(b).

57.     Experian sold credit reports relating to Plaintiff to third parties with inaccurate and derogatory information.

58.     The inaccurate information includes, but is not limited to personal identifying, account and inquiry information (the "inaccurate information").

59.     Experian reported inquiries that were not authorized by Plaintiff or obtained for a permissible purpose, or both.

60.     The inaccurate information also includes accounts, personal identifying information and inquiries.

61.     The inaccurate information is false because the information does not relate to Plaintiff.

62.     In other words, the information is inaccurate because it relates to a consumer other than Plaintiff.

63.     The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict Plaintiff's credit history and creditworthiness.

64.     Experian prepared and issued credit reports concerning Plaintiff to third parties that included the inaccurate information.  Upon information and belief, Experian identified, or should have identified, Plaintiff's file as a "confirmed mixed file" as that term is defined by Experian's settlement agreement with the New York Attorney General. Experian sold Plaintiff's credit report to third parties for transactions that did not relate to Plaintiff.  Plaintiff disputed inaccurate information to Experian. Experian continued to report inaccurate information to third parties.

65.     Plaintiff notified Experian that its reporting of the inaccurate information was inaccurate.

66.     Plaintiff notified Experian that the inaccurate information was not his.

67.     Experian did not contact third parties concerning the accuracy of the disputed information.

68.     Experian did not review underlying account documents for either account, such as the applications for credit.

69.     Experian did not conduct any handwriting analysis on Plaintiff's signature or the signature on the account applications.

70.     Experian did not make a reasonable inquiry into the disputed information.

71.     Experian did not review all relevant information provided by Plaintiff related to the disputed information.

72.     At best, Experian verified the false information by confirming Plaintiff's personal identifying information with the personal identifying information reported by the data furnishers who supplied the disputed information.

73.     Experian failed to modify or delete all of the inaccurate information.

74.     Despite Plaintiff's exhaustive efforts to date, Experian has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations and/or investigations of the above disputes as required by the FCRA and failed to remove all of the inaccurate information,

75.     At all pertinent times hereto, Plaintiff was not responsible for the disputed debts.

76.     As of result of Experian's conduct, Plaintiff has suffered actual damages in the form of denial of credit, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities, and emotional distress, including humiliation and embarrassment.

77.     At all times pertinent hereto, Experian was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Experian.

78.     At all times pertinent hereto, Experian's conduct, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

79.     Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to the

Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law for their violations of the FCRA.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Negligent Noncompliance with FCRA)

80.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

81.     Experian negligently failed to comply with the requirements of the FCRA, including but not limited to sections 1681b, e(b) and i.

82.     As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

83.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Willful Noncompliance with FCRA)

84.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

85.     Experian willfully failed to comply with the requirements of the FCRA, including but not limited to sections 1681b, e(b) and i.

86.     As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

87.     Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

88.     Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

**COUNT THREE – VIOLATIONS OF THE NY FCRA**

89.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

90.     52. The CRA Defendants each violated multiple sections of the NY FCRA (NY G.B.L. §§ 380-380-u) by its acts and omissions including:

    a.  failing to promptly reinvestigate Plaintiff's dispute to determine whether the disputed information is inaccurate and record the current status of the disputed information in violation of §380-f(a);

    b.  failing, after determining that the disputed information is in error or that it can no longer be verified, to promptly expunge the item and otherwise correct the file and refrain from reporting the item in subsequent consumer reports, in violation of §380-f(b); and

    c.  failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of his credit report and credit files that it published and maintained in violation of §380-j(e).

91.     These violations of §380-f and §380-j(e) were willful, rendering the CRA Defendants liable for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to §380-l and entitling Plaintiff to injunctive relief restraining Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

92.     In the alternative, Experian was negligent, entitling Plaintiff to recover actual damages and costs and reasonable attorney's fees pursuant to § 380-m as well as injunctive relief restraining Experian from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**JURY DEMAND**

14

93.     Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Attorneys' fees and costs; and

3.  Such other and further relief as may be necessary, just and proper.

On the Second Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury;

4.  Attorneys' fees and costs; and

5.  Such other and further relief as may be necessary, just and proper.

On the Third Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Statutory damages to be determined by the jury;

3.  Punitive damages to be determined by the jury;

4.  An order directing Defendant to delete all inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and

5. An order directing Defendant to send updated and corrected credit report information to all persons and entities to whom they have reported inaccurate information about Plaintiff within the last three years;

6. An order enjoining Experian from violating Plaintiff's NY FCRA rights;

7. Attorneys' fees and costs; and

8. Such other and further relief as may be necessary, just and proper.

Respectfully submitted,

**LAW OFFICE OF ADAM G. SINGER, PLLC**
Adam G. Singer
60 E. 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428
E: asinger@adamsingerlaw.com
Attorney Bar #AS7294

Micah S. Adkins
(motion for *pro hac vice forthcoming*)
**THE ADKINS FIRM, P.C.**
7100 Executive Center Drive, Suite 110
Brentwood, Tennessee 37027
Telephone:      (615) 370.6759
Facsimile:       (615) 370.4099
Email:    MicahAdkins@ItsYourCreditReport.com
*Counsel for Plaintiff*